IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| KATHLEEN E. CAMARENA,<br><br>                    Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>                    Defendant. | CV 19-94-BLG-TJC<br><br><br>**ORDER** |

On September 12, 2019, plaintiff Kathleen E. Camarena ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  (Doc. 2.)  On November 12, 2019, the Commissioner filed the Administrative Record ("A.R.").  (Doc. 9.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 11.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 12, 13.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **AFFIRMED**.

## I.    PROCEDURAL BACKGROUND

This matter is before the Court for a second time.  Plaintiff previously appealed the denial of her request for benefits to this Court on April 8, 2017.  *See Camarena v. Berryhill*, CV 17-44-TJC, Docket No. 2 (D. Mont. April 8, 2017); A.R. 963-1007.  In the prior case, the Court determined Administrative Law Judge Michael Kilroy (the "ALJ") erred by failing to ask the vocational expert if his testimony was consistent with the Dictionary of Occupational Titles.  (A.R. 1002-1005.)  The Court, therefore, reversed the Commissioner's decision and remanded the matter for further proceedings.  (A.R. 1006.)

Plaintiff filed a subsequent claim for Title II benefits on April 7, 2017.  (A.R. 1010.)  The Appeals Council determined the subsequent claim was duplicative, and therefore, directed the ALJ to consolidate Plaintiff's claims and issue a new decision on the consolidated claims.  (Doc. 1010.)  The Appeals Council further directed the ALJ to offer Plaintiff a new hearing and to address any additional evidence obtained with the subsequent claim.[1]  (*Id.*)

---

[1] "When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may

On remand, the ALJ held a second hearing on April 16, 2019.  (A.R. 831-895.)  On May 20, 2019, the ALJ issued a written decision again finding Plaintiff not disabled.  (A.R. 808-821.)  Thereafter, Plaintiff filed the instant action.  (Doc. 2.)

Plaintiff argues the ALJ again committed reversible error by (1) improperly discounting the opinions of the treating physicians; (2) improperly discrediting her testimony; and (3) failing to incorporate all of her limitations into the vocational expert's hypothetical questioning.

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is

---

make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision[.]"  20 C.F.R. § 404.983.

not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a

conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

In addition, "[d]eviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."  *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).  Given the nature of the current review, it is also important to note that the "the law of the case doctrine and rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case."  *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016).  *See also Nolte v. Astrue*, 2012 WL 4466558, *2 (D. Ariz. Sept. 27, 2012) ("Courts reviewing Social Security cases after a limited remand have refused to re-examine issues settled by a district court's prior order.").

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy.  42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step sequential evaluation process.  If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5.  Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   THE ALJ'S FINDINGS ON REMAND

The ALJ noted that Plaintiff had filed a subsequent claim for benefits and consolidated the claims pursuant to the Appeals Council's directive.  (A.R. 808.) The ALJ also acknowledged this Court's remand order, and proceeded to follow the five-step sequential evaluation process in re-considering Plaintiff's claim.

First, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 8, 2013.  (A.R. 811.)  Second, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, seronegative rheumatoid arthritis, lupus, degenerative disc disease of the lumbar and cervical spine, obesity, depressive disorder, and anxiety disorder."  (A.R. 811.) Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal any one of the impairments in the Listing of Impairments.  (A.R. 811-813.)  Fourth, the ALJ stated Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for four to six hours total in an eight-hour workday; sit for six hours total in an eight-hour workday; occasionally reach overhead with one pound or less; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; never crawl; occasionally balance, stoop, kneel, and crouch; avoid concentrated exposure to extreme cold and to vibrations; and frequently use the bilateral upper extremities but no constant use.  The claimant is unable to interact appropriately with

large groups.  She is able to interact with small groups (two to four
people) on only occasional basis, and she is able to interact on-on-one
on a frequent basis.  In addition, the claimant is limited to work
requiring only occasional new learning.  Finally, she is unable to
tolerate high stress, which includes the performance of high
production quotas and assembly line work.

(A.R. 813.)  The ALJ next found that Plaintiff was not able to perform any past

relevant work.  (A.R. 818-819.)  However, the ALJ found that there are jobs that

exist in significant numbers in the national economy that Plaintiff can perform,

including price marker/checker, inspector/packager, photocopier, and dispatcher.

(A.R. 820.)  Thus, the ALJ found that Plaintiff is not disabled.  (A.R. 820.)

## IV.   DISCUSSION

The Court previously found no reversible error with regard to the ALJ's

consideration of the medical opinion evidence or Plaintiff's credibility.  (A.R. 989-

996.)  The Commissioner argues the law of the case doctrine precludes

reconsideration of these already-settled issues.

"The law of the case doctrine generally prohibits a court from considering an

issue that has already been decided by that same court or a higher court in the same

case."  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  In *Stacy*, the Ninth

Circuit expressly held the law of the case doctrine applies in the social security

context.  *Id.*  Thus, the law of the case doctrine precludes the re-litigation of issues

that were settled by the district court's prior remand order, unless (1) the evidence

8

on remand is substantially different, (2) the controlling law has changed, or (3) if applying the doctrine would be unjust. *Id.*

District courts in the Ninth Circuit have historically declined to reconsider issues that were decided by a prior remand order. *See e.g. Pearson v. Chater*, 1997 WL 314380, *3 (N.D. Cal. Feb. 20, 1997) ("Under the law of the case doctrine, this court will not re-examine its legal decision that the ALJ had sufficient reasons to discount Dr. Newkirk's testimony."); *Neuvirth v. Astrue*, 2011 WL 2470676, *5 (E.D. Wash. June 20, 2011) (finding it would be error for the court to reconsider whether the ALJ properly discounted a medical source's opinion where the district court's prior remand order expressly affirmed the ALJ's reason for rejecting the opinion).

Here, the Court previously determined the ALJ provided specific, clear and convincing reasons for finding Plaintiff less than credible. (A.R. 995-996.)  The Court also found the ALJ gave adequate reasons for affording less weight to the opinions of Dr. Tom Peterson and Laura Wetherelt, NP-C.  (A.R. 989-993.) Typically it would be error for the Court to reconsider these issues. *Neuvirth*, 2011 WL 2470676 at *5.  This case presents a unique situation, however, because Plaintiff filed a subsequent claim for benefits, which was consolidated with this claim on remand.  As such, the ALJ considered additional evidence on remand that

was submitted with the subsequent claim.  (A.R. 1226-1853.)  Accordingly, the

Court finds the circumstances and evidence on remand are substantially different

enough to preclude application of the law of the case doctrine, at least as to the

ALJ's consideration of evidence that was presented for the first time after remand.

### A.    The ALJ's Evaluation of Treating Physician Opinions

In Plaintiff's "Statement of Issues Presented for Review," she asserts the

ALJ improperly discounted the opinion of "the treating physicians."  (Doc. 11 at

5.)  She does not, however, clearly specify which treating physicians' opinions are

at issue.  In her factual recitation, she summarizes treatment notes from several

providers.  But the only treating opinion she clearly identifies as having been

improperly discounted is Ms. Wetherelt's.  In her argument, Plaintiff states the

ALJ "denied weight to the opinion of Ms. Wetherel[t], NP-C . . . It was error to

discount her opinion . . . [.]"  (*Id.* at 33.)  Because the Commissioner argued the

law of the case doctrine prohibits re-litigation of this issue, the Commissioner did

not substantively address Plaintiff's argument.

Ms. Wetherelt is a certified nurse practitioner who treated Plaintiff at the

Eastern Montana Community Mental Health Center.  Ms. Wetherelt previously

opined that Plaintiff requires an alternate-day schedule and cannot tolerate being

on her feet for 8 hours due to pain.  (A.R. 784.)  She also made several statements

10

about Plaintiff's employability in the job market, including whether an employer would make an accommodation for certain limitations.  (*Id.*)  The ALJ gave great weight to her opinion regarding Plaintiff's ability to stand and/or walk.  (A.R. 23.)  But the ALJ discounted Ms. Wetherelt's other statements regarding Plaintiff's ability to be employed.  (*Id.*)  The Court found the ALJ did not error with regard to Ms. Wetherelt.  (A.R. 991-993.)

After the ALJ's prior decision, Plaintiff continued to see Ms. Wetherelt. (A.R. 1249-1342; 1592-1599; 1606-1611; 1614-1618.)  But Ms. Wetherelt did not provide an updated medical source statement.

On remand, the ALJ gave nearly identical reasons for affording Ms. Wetherelt's opinion partial weight.  (*Compare* A.R. 23 *with* A.R. 817.)  The ALJ again credited Ms. Wetherelt's opinion regarding Plaintiff's inability to be on her feet for 8 hours per day.  (A.R. 817.)  But the ALJ explained he gave the opinion only partial weight because Ms. Wetherelt's other statements regarding Plaintiff's employability in the job market were not medical opinions.  (A.R. 817.)  The Court previously found these were germane reasons[2] for affording the opinion less

---

[2] At the time Plaintiff's claim was filed, the Social Security regulations separated medical evidence into two categories: (1) "acceptable medical sources," which includes licensed physicians and licensed or certified psychologists; and (2) "other sources," which includes nurse practitioners, physician's assistants, therapists, and counselors.  20 C.F.R. 416.913(a), (d) (amended March 27, 2017).  *Leon v.*

weight, and does so again.  Accordingly, the Court finds that the ALJ did not err with respect to Ms. Wetherelt on remand.

To the extent Plaintiff is challenging the ALJ's consideration of Dr. Peterson's opinion on remand, the Court finds no error.  Dr. Peterson conducted two consultative psychological examinations of Plaintiff, one in February 2014 and one after remand, on January 5, 2018.  (A.R. 440-451; 1558-1568.)  Previously, the Court found no error with regard to the ALJ's consideration of Dr. Peterson's February 2014 opinion.  (A.R. 989-991.)  The Court declines to revisit that determination under the law of the case doctrine.

With respect to the examination in January 2018, Dr. Peterson evaluated Plaintiff a second time and assessed Plaintiff with a GAF score of 58.[3]  (A.R.

---

*Berryhill*, 880 F.3d 1041, 1046 (9th Cir. Nov. 7, 2017) (noting that prior to March 27, 2017, opinions of "other sources," such as nurse practitioners were not given the same weight as a physician's opinions).  Opinions of "other sources," are not entitled to the same deference.  *Molina v. Astrue*. 674 F.3d 1104, 1111 (9th Cir. 2012).  The ALJ may discount opinions from "other sources" if the ALJ gives "germane reasons" for doing so.  *Id.*  As a certified nurse practitioner, Ms. Wetherelt is not an acceptable medical source but is rather an "other" source.  20 C.F.R. § 404.1513(d); *see also Vega v. Colvin*, 2015 WL 7769663, *12 (S.D. Cal. Nov. 12, 2015) ("Nurse practitioners are not considered 'acceptable medical sources' under 20 C.F.R. § 416.913.  Instead, nurse practitioners are considered 'other sources.'").

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. According to the DSM–IV . . . A GAF score between 51 to 60 describes 'moderate

1567.)  Dr. Peterson also opined that Plaintiff possesses the intellect and psychological ability to engage in work-related activity.  (A.R. 1568.)  He stated her primary barrier to work was her physical symptoms, but stated a medical opinion would be required as to the degree her physical symptoms were limiting. (*Id.*)

On remand, the AJL found Dr. Peterson's January 2018 opinion was entitled to "some weight."  (A.R. 817-818.)  The ALJ afforded weight to Dr. Peterson's general opinion that Plaintiff had the ability to engage in work-related activity because it was consistent with Plaintiff's ability to work part-time.  (A.R. 817.) The ALJ gave little weight, however, to the GAF score.  (A.R. 817-818.)

The ALJ correctly noted that GAF scores represent a clinician's subjective evaluation at a single point in time, which may indicate problems that do not relate to the ability to work, and are not designed for adjudicative determinations.  (A.R. 817.)  *See McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (citing 65 Fed. Reg. 50746, 50764-64 (Aug. 21, 2000)) ("The GAF score does not have a direct correlation to the severity requirements in [the Social Security

---

symptoms' or any 'moderate difficulty in social, occupational, or school functioning.'  *Garrison v. Colvin*, 759 F.3d 995, 1002, n.4 (9th Cir. 2014) (internal citations omitted).

Administration's] mental disorders listings."); *Doney v. Astrue*, 485 Fed. Appx. 163, 165 (9th Cir. 2012) (holding it was not error for the ALJ to disregard the claimant's GAF score); *Garrison v. Colvin*, 759 F.3d 995, 1002, n.4 (9th Cir. 2014) (noting GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability). As such, the ALJ's decision to afford little weight to the GAF score does not constitute legal error. Accordingly, the Court finds that the ALJ did not err with respect to Dr. Peterson on remand.

Plaintiff does not make any specific arguments with regard to the other medical evidence that was submitted to the ALJ after remand. The Court notes that the record contains treatment notes from several providers, including Dr. John Jenkins; Elizabeth Brakenbush, PA-C; Brady Ruff, PA-C; Randi Ellis, PA-C; Susan Wenger, FNP-C; Dr. Enrico Arguelles; Dr. Brett Fitterer; Wendy Lee Donaugh, NP; Trenay Hart, PA-C; and Dr. Gregory McDowell. (A.R. 1226-1248; 1344-1556; 1626-1852.) The ALJ's opinion indicates he considered most of these treatment notes, but the ALJ did not assign any weight to them.[4] (A.R. 815-816.) None of these medical providers submitted medical source statements concerning

---

[4] The ALJ did not mention the providers by name, but the ALJ's summary of the medical evidence cited to specific parts of the record containing their treatment notes.

Plaintiff's functional capacity.

Treatment notes, in general, do not constitute medical opinions. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  Because the providers generally did not offer opinions regarding Plaintiff's limitations or ability to work, their treatment notes do not constitute medical opinions the ALJ must weigh. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").  Accordingly, the ALJ did not err by failing assign a weight to the treatment notes of Dr. John Jenkins; Elizabeth Brakenbush, PA-C; Brady Ruff, PA-C; Randi Ellis, PA-C; Susan Wenger, FNP-C; Dr. Enrico Arguelles; Dr. Brett Fitterer; Wendy Lee Donaugh, NP; Trenay Hart, PA-C; or Dr. Gregory McDowell.  *See e.g. Merritt v. Colvin*, 572 Fed. Appx. 468, 470 (9th Cir. 2014) (concluding the ALJ did not err by failing to fully discuss a doctor's

examinations records because the claimant did not point to any particular record

from the doctor that would establish the existence of work-related limitations).

In sum, the Court finds no error with regard to the ALJ's consideration of

the medical opinion evidence on remand.

### B.     The ALJ's Credibility Determination

Plaintiff next argues that the ALJ's credibility determination on remand was

erroneous because the ALJ failed to provide specific clear and convincing reasons

for rejecting her testimony.  The Commissioner did not substantively address

Plaintiff's argument.

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine

whether the claimant has presented objective evidence of an impairment or

impairments that could reasonably be expected to produce the pain or other

symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no

affirmative evidence of malingering, the ALJ may reject the claimant's testimony

only if she provides "specific, clear and convincing reasons" for doing so.  *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ

must make 'a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony.'"  *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224

n.3 (9th Cir. 2010).  "General findings are insufficient; rather, the ALJ must

identify what testimony is not credible and what evidence undermines the

claimant's complaints."  *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

The clear and convincing standard "is not an easy requirement to meet: '[It] is the

most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d

995, 1015 (9th Cir. 2014).

To assess a claimant's subjective symptom testimony, the ALJ may consider

(1) ordinary credibility techniques, (2) unexplained or inadequately explained

failure to seek or follow treatment or to follow a prescribed course of treatment,

and (3) the claimant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).  An ALJ may

also take the lack of objective medical evidence into consideration when assessing

credibility.  *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir.

2004).

Here, the first step of the analysis is not at issue.  The ALJ determined that

Plaintiff's medically determinable impairments could reasonably be expected to

cause her symptoms, and there is no argument that Plaintiff is malingering.

Therefore, the ALJ was required to cite specific, clear and convincing reasons for

rejecting Plaintiff's subjective testimony about the severity of her impairments. The Court finds the ALJ did so on remand.

First, the ALJ found Plaintiff's reported activities of daily living were not as limiting as one would expect from an individual alleging complete disability. (A.R. 814.)  The ALJ noted that Plaintiff reported her symptoms cause pain and extreme fatigue, and that she is only able to lift and carry 10 pounds and walk a couple of blocks at a time.  (*Id.*)  The ALJ further noted, however, that Plaintiff is able to live independently, handle all personal care, prepare daily meals, perform several household chores, shop in stores, spend time with family, play video games, read, care for dogs, and work 16 to 25 hours per week.  (*Id.*)  The ALJ's observations are supported by the evidence in the record (*See* A.R. 240-47), and are legitimate reasons for discounting a claimant's testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaints when they are inconsistent with the claimant's activities).

Next, the ALJ found the objective medical evidence was not wholly consistent with Plaintiff's subjective complaints.  (A.R. 815.)  For example, the ALJ stated that a follow-up MRI of the lumbar spine in 2018 showed no significant worsening from prior MRIs, and that x-rays from 2018 showed no significant

abnormalities.  (*Id.*)  Likewise, the ALJ stated an MRI of the cervical spine in 2019

showed mild to moderate multilevel degenerative changes without significant

spinal canal stenosis.  (*Id.*)  The ALJ further noted that Plaintiff's physical

examinations generally showed a normal gait and motor strength, negative straight

leg testing, intact reflexes and sensation, and full range of motion of the spine and

extremities.  (*Id.*)  The ALJ acknowledged that Plaintiff was observed with

widespread tender points in September 2018.  (*Id.*)  But the ALJ explained her

provider questioned how much of the pain was physiologically-based versus

psychologically-based.  (*Id.*)  The ALJ also noted that Plaintiff's providers

consistently noted she was in no acute distress, had intact memory, attention and

concentration, and a cooperative attitude.  (*Id.*)  An ALJ may take objective

medical evidence into consideration when assessing credibility, *Baston*, 359 F.3d

at 1196, and there is support for the ALJ's conclusions in the record.  (A.R. 1251-

1342; 1464-65; 1472-1530; 1593-1622; 1619; 1647; 1706-08; 1728-29; 1754;

1777; 1799; 1804-05; 1833; 1846.)

Plaintiff cites other medical records that support, rather than contradict, her

claims.  But the Court may not substitute its judgment for that of the ALJ.  *Robbins

v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Rather, it "must uphold the

ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-1040 (9th Cir. 1995).

Next, the ALJ found the frequency or extent of the treatment Plaintiff sought was not comparable with the degree of her subjective complaints. (A.R. 815.) The ALJ noted that Plaintiff requested her anti-depressant medication be stopped in January 2019 because she felt that she no longer needed it. (*Id.*) Plaintiff also reported good pain relief with the use of cannabis. (*Id.*) The ALJ determined Plaintiff's use of cannabis demonstrated some evidence of improved pain under conservative care. (*Id.*) The ALJ's observations are supported in the record, and are a permissible basis for discounting Plaintiff's testimony. On January 18, 2019, Plaintiff reported that she felt she no longer needed her anti-depressant, as she was not particularly symptomatic, and that she had been using THC "with good benefit in regards to her pain." (A.R. 1662.) Evidence of conservative treatment may be "sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Finally, the ALJ found Plaintiff failed to follow prescribed treatment. (A.R. 815.) Specifically, the ALJ pointed out that Plaintiff stopped attending mental health counseling and the record lacked any evidence of recent mental health treatment. (A.R. 815-816.) The failure to follow a prescribed course of treatment

20

is a specific finding sufficient to discredit a plaintiff's testimony. *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th Cir. 1989). If a claimant cannot afford treatment, however, the failure to receive medical care cannot support an adverse credibility finding. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001 (9th Cir. 2006); *Gamble v. Charter*, 68 F.3d 319, 322 (9th Cir. 1995); *Fisher v. Colvin*, 2015 WL 1442064, at *17 (E.D. Cal. Feb. 20, 2015)

Here, the ALJ did not consider whether the lapse in treatment was due to lack of resources. The record indicates that Plaintiff did not establish with psychiatry as recommended in June of 2018 because she found out her insurance was not accepted. (A.R. 1743.) The ALJ did not consider whether this fact adequately explained Plaintiff's failure to seek or follow up with her mental health treatment. On this point, therefore, the ALJ's credibility finding is not supported by substantial evidence.

Nevertheless, the error is harmless. The Ninth Circuit has recognized that "an ALJ's error [is] harmless where the ALJ provide[s] one or more invalid reasons for disbelieving a claimant's testimony, but also provide[s] valid reasons that [are] supported by the record." *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). As discussed above, the ALJ provided other valid reasons for discounting Plaintiff's testimony concerning the severity and persistence of her

21

limitations that are supported by the record.

The Court therefore finds the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear and convincing reasons.

### C.     The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert.

Finally, Plaintiff argues the ALJ failed to incorporate all her limitations into the hypothetical questions posed to the vocational expert.  The Commissioner did not address Plaintiff's argument.

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value.  *Embrey*, 849 F.2d at 422

As discussed above, the Court has determined the ALJ adequately supported her reasons for discounting Plaintiff's testimony and the medical source evidence. Accordingly, the hypotheticals the ALJ relied on properly accounted for all of Plaintiff's limitations that the ALJ found to be supported by evidence in the record.

Therefore, the Court finds the ALJ's determination at step five is supported by substantial evidence.

## V.      CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**, and Plaintiff's motion for summary judgment (Doc. 11) is **DENIED**.

DATED this 30th day of October, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge